No. 24-5799

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLOS SANCHEZ,

*Plaintiff-Petitioner*,

v.

SAM'S WEST, INC.,

*Defendant-Respondent.*

**REPLY IN SUPPORT OF PLAINTIFF-PETITIONER CARLOS SANCHEZ'S PETITION FOR LEAVE TO APPEAL ORDER DENYING CLASS CERTIFICATION OF PETITIONER'S PROPOSED MONETARY RELIEF CLASS PURSUANT TO RULE 23(f)**

Marcus J. Bradley
Kiley L. Grombacher
Lisa Johnston Nicholes
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail:  mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
ljnicholes@bradleygrombacher.com

*Counsel for Plaintiff-Petitioner*

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ......................................................................................................3

   A. Petitioner Has Identified Two Common Policies Which Result In Unpaid Off-The-Clock Work, and Tyson Foods And Senne Make Clear That Variations In Application Of The Exit Policy Cannot Defeat Predominance ..........................3

   B. SWI's Answer Illustrates That It Remains Unknown Whether And To What Extent The Role of Time Adjustments For Regularly Occurring Off-The-Clock Can Justify The Denial of Class Certification Without Offending *Troester* Thus Necessitating Review ................................................................6

   C. The District Court's Order Denying Certification Is A Death-Knell For Petitioner's And Putative Class Members, And The Order Is Legally Questionable Due To Manifest Error In Its Mistreatment Of The Survey And Its Failure To Evaluate The Quantity And Quality Of The Evidence ...............9

III. CONCLUSION ................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Blair v. Equifax Check Servs., Inc.*
  181 F.3d 832 (7th Cir. 1999) ................................................................... 3

*Chamberlan v. Ford Motor Co.*
  402 F.3d 952 (9th Cir. 2005) ........................................................... 2, 8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
  509 U.S. 579 (1993). ................................................................................ 3, 7

*Hilton Hotels Ret. Plan v. White*
  144 S.Ct. 487 (2023) ................................................................................. 2

*In re White*
  64 F.4th 302 (D.C. Cir. 2023) ............................................................... 2, 8

*Miles v. Kirkland*
  89 F.4th 1217 (9th Cir. 2024) ........................................................ 6, 7, 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
  31 F.4th 651 (9th Cir. 2022) ..................................................................... 6

*Senne v. Kansas City Royals Baseball Corp.*
  934 F.3d 918 (9th Cir. 2019) ............................................................ 1, 3, 5

*StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*
  143 S. Ct. 424 L. Ed. 2d 233 (2022) ......................................................... 6

*Troester v. Starbucks Corp.*
  5 Cal.5th 829 (2019) ............................................................................. 2, 8

*Tyson Foods, Inc. v. Bouaphakeo*
  136 S.Ct. 1036 (2016) ........................................................................ 1, 3, 5

I.  **INTRODUCTION**

In its Answer to [Plaintiff-Petitioner] Carlos Sanchez's Rule 23(f) Petition ("Answer"), SWI—like the district court—repeatedly distorts binding case law related to class certification. SWI also misconstrues the *Chamberlan* factors.

First, both the district court's Order and SWI's Answer misrepresent *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) and ignore *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918 (9th Cir. 2019). *Tyson Foods* holds that a statistically valid representative sample can show predominance of common questions of law or fact if the moving party can point to a common policy. *Tyson Foods* does not additionally require that the sample participants have identical experiences under the common policy. (*See* Order pp. 13, 15; Answer pp. 19-22.) Petitioner has identified *two* common policies that result in unpaid exit wait time. Any variations in implementing these common policies between SWI's warehouse club locations—even if they are "meaningful variations"—do not justify rejection of Petitioner's survey and denial of class certification, especially considering Petitioner's survey accounts for those variations. *Senne*, 934 F.3d at 945 (cleaned up) ("meaningful variations" exist in "players' arrival and departure times, [yet] the same was true of the employees' donning and doffing times in *Tyson*—[and] such variation did not preclude certification there"). The district court's Order reflects precisely "[t]he kind of error most likely to warrant interlocutory review" under Rule

23(f) because it is "one of law." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) (defining "manifest error" as an error of law).

Second, Petitioner's survey reveals that nearly 93% of putative class members experienced off-the-clock exit delays on 60% of all closing shifts ending between 10:00 p.m. and 11:55 p.m.—i.e., they experienced off-the-clock exit delays more often than not. Instruction is needed from this Court as to whether and to what extent the availability of "a time resolution process militates against class certification of an off-the-clock claim for lack of predominance" (Answer p. 15), given that *Troester v. Starbucks Corp.*, 5 Cal.5th 829, 848 (2019) holds that the employer bears the burden of tracking work time that occurs on a regular basis—and again, here the survey shows exit delay work time occurs more often than not. Unless the Court grants Petitioner's request for review, this prevalent wage and hour class action issue will, "for all practical purposes[,]" evade end-of-case review because of, *inter alia*, "the shape-shifting that the legal question would undergo by the conclusion" of individual litigation. *In re White*, 64 F.4th 302, 307 (D.C. Cir.), *cert. denied sub nom. Hilton Hotels Ret. Plan v. White*, 144 S.Ct. 487 (2023); *see also Chamberlan*, 402 F.3d at 959 (the Ninth Circuit's framework for evaluating Rule 23(f) petitions "most closely approximates the standard[s] adopted by the D.C. Circuit").

Third, SWI misunderstands *Chamberlan*'s "death-knell" factor. The district court's Order denying certification <u>with prejudice</u> is in fact a death-knell for

Petitioner and putative class members. *Chamberlan*'s "death-knell" factor does not require Petitioner to "demonstrate why he could not pursue any individual claims." (Answer p. 26.) Rather, "when denial of class status seems likely to be fatal" because "the remaining plaintiff has only a small stake"—as is the case here—, "and when the [petitioner] has a solid argument in opposition to the district court's decision"— as Petitioner does here—, "then a favorable exercise of appellate discretion [under Rule 23(f)] is indicated." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) (expounding on the purposes behind the "death-knell" factor).

Appellate review under Rule 23(f) is appropriate.

## II. ARGUMENT

### A. Petitioner Has Identified Two Common Policies Which Result In Unpaid Off-The-Clock Work, and Tyson Foods And Senne Make Clear That Variations In Application Of The Exit Policy Cannot Defeat Predominance

Class certification in this case hinges on whether *Tyson Foods* and *Senne* permit Petitioner to establish predominance using data from a statistically valid survey—not challenged under *Daubert*[1]—which shows widespread unpaid off-the-clock injury amongst putative class members as a direct result of two universal policies imposed by SWI on putative class members.

To begin with, SWI disingenuously argues that "Petitioner failed to establish

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

the existence of a common policy causing all employees to wait at the exits without compensation[.]" (Answer p. 20.) Not so. Petitioner established the existence of not only one but *two* common policies[2] which, working together, result in off-the-clock exit delays as reflected in Petitioner's statistically valid survey. Specifically, Petitioner has identified a 10:00 p.m. door-locking policy and a pay policy which: (1) instructs putative class members to clock out when no longer performing work; but (2) fails to identify off-the clock exit wait time as compensable work time; and (3) also prohibits unauthorized overtime, thereby incentivizing putative class members to clock out immediately upon the end of their shift. Even the district court acknowledged that, "[t]o be sure, [SWI] does indeed have a uniform policy that applies to all putative class members." (Order p. 10.) "[C]ommon corporate policies like this carry great weight for certification purposes and [] predominance is rarely defeated in cases where such uniform policies exist." *Senne*, 934 F.3d at 944 (cleaned up). Thus, just as in *Tyson Foods*, Petitioner's survey—along with the other ample evidence Petitioner put forth—is applicable to, and demonstrative of, predominance because putative class members were subject to the same SWI door-locking and pay policies and experienced at least a 93% injury rate as a result of these policies.

---

[2] Petitioner's clear identification of two universal policies renders *Wal-Mart Stores, Inc. v. Dukes* inapposite and inapplicable. 131 S.Ct. 2541, 2554 (2011). The *Wal-Mart* plaintiffs were unable to utilize representative samples because they, unlike Petitioner, could not point to *any* common corporate policy. *Id.*

Next, SWI seeks to marginalize the survey's clear utility by arguing that Petitioner's representative sample cannot establish predominance because of purported variations between how SWI's warehouse club locations implemented the 10:00 p.m. door-locking policy which, according to the district court and SWI, render "the survey [] insufficient to establish predominance" (Answer p. 21.) (*See* Order p. 11 ["stores implemented the exit policy in different ways]); Answer p. 20 [claiming that manager declarations give examples variations in how and when employees are released after being locked inside the store].) This reasoning fails for two reasons: (1) as acknowledged by the district court (Order p. 14), Petitioner's statistics expert reliably applied reliable scientific principles to specifically account for and discredit the significance of any varying exit practices (and the variances alleged by SWI are theoretical and disputed by Petitioner); and (2) *Tyson Foods* and *Senne* hold that a representative sample can demonstrate predominance even when there are "meaningful variations" in how the putative class members experienced the universal policies common to the class. *See Senne*, 934 F.3d at 945 (cleaned up) ("meaningful variations" exist in "players' arrival and departure times, [yet] the same was true of the employees' donning and doffing times in *Tyson*—[and] such variation did not preclude certification there").

In sum, all of SWI's ill-conceived attempts to detract from Petitioner's compelling survey data fall short because "[p]redominance in employment cases is

rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer[,]" which Petitioner has shown here. *Miles v. Kirkland*, 89 F.4th 1217, 1224 (9th Cir. 2024) (citing and quoting *Senne*, 934 F.3d at 938). The Order denying certification "is manifestly erroneous and virtually certain to be reversed on appeal from the final judgment" (*id.* at 962) because it does not fall anywhere "within a broad range of permissible conclusions." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424, 214 L. Ed. 2d 233 (2022) (a district court's determination must be within a broad range of permissible conclusions to be upheld on appellate review). Interlocutory review is warranted.

    **B.    SWI's Answer Illustrates That It Remains Unknown Whether And To What Extent The Role of Time Adjustments For Regularly Occurring Off-The-Clock Can Justify The Denial of Class Certification Without Offending *Troester* Thus Necessitating Review**

Not once in its twenty-two page Answer does SWI mention the data from Petitioner's persuasive representative sample. The survey data establishes that nearly 93% of putative class members wait for an average of 9 minutes on 60% of their

closing shifts.[3] Otherwise stated, *more often than not* putative class members who have clocked out at the end of their shifts confront, and must wait at, locked exit doors as a result of SWI's door-locking policy. The evidence—derived from SWI's internal data—shows that time adjustments are rarely, if ever, submitted for unpaid exit wait time. Data from Petitioner's financial forensics expert, which SWI did not challenge under *Daubert*, shows that *at most* only 301 out of 9,257 time adjustments made by employees between June 23, 2018 and February 5. 2021 reflect an adjusted shift out time between 10:00 p.m. and 11:55 p.m., and that number *plummets* to 174 when excluding time adjustments made at the top of the hour and the bottom of the hour. The time adjustments involved here are simply not mathematically significant enough to defeat class certification in this case.

Rule 23(f) review is needed because the district court relied upon the mere availability of time adjustments as support for its Order denying certification to Petitioner's proposed Monetary Relief Class, quoting this Court's language from *Miles*. (Order p. 12 ["Indeed, the Ninth Circuit in *Kirkland* denied class certification in part because of this exact same issue—that "employees could use time adjustment logs to record uncompensated time if they believed that their bags had been checked after clocking out."] It is unclear whether the district court's reasoning violates the

---

[3] Again, Petitioner's survey was not challenged under *Daubert* and Petitioner's statistics expert reliably applied reliable scientific principles to account for varying exit practices.

California Supreme Court's directive from *Troester*, that when off-the-clock work is frequently occurring, as it is here, it is the employer's duty to record and compensate employees for that time. *Troester*, 5 Cal.5th at 848.

The interplay between *Troester* and the availability of time adjustments when determining class certification presents an unsettled and fundamental issue of law relating to class actions, both specific to Petitioner's case and to class action litigation generally. *Chamberlan*, 402 F.3d at 959. *Troester* holds that the employee should not "bear the entire burden" of "recording regularly occurring worktime" (*Troester*, 5 Cal.5th at 848), yet both the district court and SWI maintain that the mere possibility that Petitioner and putative class members *may* submit time adjustments[4] is enough to defeat class certification for their widespread off-the-clock work claims. (Order p. 12; Answer pp. 11, 15-16.) Unless addressed via interlocutory review, this important issue "will likely evade end-of-case review for all practical purposes." *In re White*, 64 F.4th at 307. "[H]owever cogent [this issue is] at the class certification stage"—it will "become[] muddied, or, at minimum, substantially diluted" should Petitioner's individual case against SWI proceed to final judgment. *Id*.

---

[4] Petitioner's evidence clearly shows that putative class members were unaware that they could submit time adjustments for off-the-clock exit wait time because, *inter alia*: SWI's pay policy does not identify exit delays as work; SWI's pay policy prohibits unauthorized overtime; and there is no time adjustment system code for exit delays.

Lastly, SWI grossly miscasts Petitioner's concerns as an argument that Troester "provide[s] that time adjustments are illegal as a matter of law." (Answer p. 16.) Petitioner does not question that legality of time adjustments for irregular, atypically occurring work. Rather, Petitioner asks whether, under *Troester*, a district court can deny class certification on the basis that time adjustments are theoretically available to employees, specifically when those employees are regularly and routinely performing off-the-clock work stemming from the employer's common company policies.

    **C.**    **The District Court's Order Denying Certification Is A Death-Knell For Petitioner's And Putative Class Members, And The Order Is Legally Questionable Due To Manifest Error In Its Mistreatment Of The Survey And Its Failure To Evaluate The Quantity And Quality Of The Evidence**

Rule 23(f)'s text and purpose counsel a broad reading of "death-knell situation." *Chamberlan*, 402 F.3d at 960 (the *Chamberlan* "factors are merely guidelines, not a rigid test" and Rule 23(f) grants the courts of appeal "broad discretion"). The district court denied Petitioner's renewed motion for class certification *with prejudice*. The Order has created a death-knell situation for Petitioner's and putative class members' claims because, just as in *Chamberlan*, "absent a class action, [Petitioner and] Class Plaintiffs [] have no meaningful redress against [SWI]." *Chamberlan*, 402 F.3d at 960.

Moreover, the district court's Order is questionable, at best, because the

district court reached its conclusion by erroneously setting aside Petitioner's statistically valid survey—as well as Petitioner's other large volume of evidence—and instead wrongly relying on a smattering of disputed outlier evidence from SWI contrary to this Court's directive from *Miles*. 89 F.4th at 1222 and 1224 n. 3 (cleaned up) ("[b]oth the quantity and the quality of the declarations matter" and the district court "must engage in a rigorous analysis of all the evidence").

## III. CONCLUSION

For the reasons stated above and in Petitioner's Opening Brief, Petitioner respectfully requests that the Court grant interlocutory review of the district court's Order denying certification of Petitioner's proposed Monetary Relief Class under Rule 23(f).

Dated: October 8, 2024

Respectfully submitted,

/s/ *Lisa Johnston Nicholes*
Lisa Johnston Nicholes
**Bradley/Grombacher LLP**
31365 Oak Crest Dr., Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Facsimile: (805) 270-7589
Email: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com
Email: ljnicholes@bradleygrombacher.com

Counsel for Plaintiff-Petitioner